IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TERRY G. HEWLETT,                  )
                                   )
                 Plaintiff,        )
                                   )
vs.                                )        Case No. 07-1177-MLB
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of                    )
Social Security,                   )
                                   )
                 Defendant.        )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On May 23, 2006, administrative law judge (ALJ) Michael R.
Dayton issued his decision (R. at 17-30).  Plaintiff alleged
disability beginning October 13, 2003 (R. at 17).  Plaintiff is
insured for disability insurance benefits through December 31,
2008 (R. at 19).  At step one, the ALJ found that plaintiff did

4

not engage in substantial gainful activity from October 13, 2003
until December 5, 2005 (R. at 19).  At step two, the ALJ found
that plaintiff had the following severe impairments: asthma,
obesity, headaches and lower extremity edema (R. at 19).  The ALJ
further determined that hypertension, neck pain, knee impairment,
sleep apnea, GERD, reflux esophagitis, vocal cord dysfunction,
cardiac disorder, and back pain are not severe impairments (R. at
19-21).  The ALJ also found that other impairments did not meet
the 12-month durational criteria (R. at 20-21).  At step three,
the ALJ determined that plaintiff's impairments do not meet or
equal a listed impairment (R. at 21-22).  After determining
plaintiff's RFC (R. at 22), the ALJ found at step four that
plaintiff was unable to perform past relevant work (R. at 28).
At step five, the ALJ found that plaintiff can perform light and
sedentary jobs that exist in significant numbers in the national
and regional economies (R. at 29).  Therefore, the ALJ concluded
that plaintiff was not disabled (R. at 30).

**III.  Did the ALJ err in his findings at step two that certain
impairments were not severe?**

Plaintiff contends that the ALJ's findings that GERD
(gastroesophageal reflux) and vocal cord dysfunction were not
severe impairments was erroneous.  The ALJ found that they were
impairments, but not severe impairments because they were
controlled by medication (R. at 20).

In <u>Brescia v. Astrue</u>, 2008 WL 2662593 at *1-2 (10th Cir.
July 8, 2008), the claimant argued that the ALJ improperly
determined that several of her impairments did not qualify as
severe impairments.  The court held that once an ALJ has found
that plaintiff has at least one severe impairment, a failure to
designate another as "severe" at step two does not constitute
reversible error because, under the regulations, the agency at
later steps considers the combined effect of all of the
claimant's impairments without regard to whether any such
impairment, if considered separately, would be of sufficient
severity.  The ALJ in this case (Hewlett) specifically stated
that his RFC findings incorporate all of plaintiff's limitations
that relate to plaintiff's medically determinable impairments,
"even those that are determined to be nonsevere" (R. at 28).
Thus, in accordance with <u>Brescia</u>, the court finds that the ALJ
did not commit reversible error by designating certain
impairments as not severe.

**IV.  Did the ALJ err in his consideration of plaintiff's severe impairment of headaches when establishing plaintiff's RFC?**

Plaintiff argues that although the ALJ found that
plaintiff's headaches were a severe impairment, "it was erroneous
for the ALJ not to make findings about the number of days per
year that plaintiff would miss work because of the headaches"
(Doc. 13 at 5).  The ALJ found that plaintiff's headaches were a

severe impairment (R. at 19-20).  The ALJ indicated in his
decision that plaintiff testified that he had 5-6 headaches a
year characterized by pain in the back of the head requiring that
he lie down and sleep until the next day; however, plaintiff also
indicated that had not missed any work because of headaches (R.
at 23).  The ALJ's findings are consistent with plaintiff's
testimony, as plaintiff testified that he had missed six days of
work, but none of those missed days was due to headaches (R. at
435-436).  Based on plaintiff's own testimony, there was a
legitimate basis for not finding that plaintiff would miss a
certain number of days per year due to headaches.  Furthermore,
plaintiff's treating physician, Dr. Doornbos, did not indicate in
his statement that plaintiff would miss a certain number of days
due to headaches, although he indicated that plaintiff would miss
work due to asthma (R. at 362-364).  Therefore, the court finds
no error by the ALJ because he did not make findings about the
number of days per year that plaintiff would miss work due to
headaches.

**V.  Did the ALJ err in his analysis of the opinions of
plaintiff's treating physician, Dr. Doornbos?**

The opinions of physicians, psychologists, or psychiatrists
who have seen a claimant over a period of time for purposes of
treatment are given more weight over the views of consulting
physicians or those who only review the medical records and never

7

examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight.  Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

Dr. Doornbos is plaintiff's pulmonary treating physician (R.

at 164, 362).  He has been treating plaintiff since October 3, 2000 (R. at 367).[1]  On April 28, 2006, Dr. Doornbos prepared a statement in which he stated:

> ...His asthma does not severely limit him much of the time when he can avoid irritants, and he often has pulmonary function test results that are not too bad.  However, he has frequent periods of asthma flares that are debilitating.
>
> His asthma is irritated by weather front changes, heat, cold, dust, irritant inhalation, chronic allergic rhinitis, gastroesophageal reflux, and upper respiratory infections.  These conditions cause flares of his asthma.  Thus, airborne irritants are not the only cause of exacerbations.  **With a clean environment, he could work some of the time, but even with clean air, his asthma would seriously flare generally at least every three to six months, during which he should not work for at least three to seven days.**  He would need to spend much of his time managing his breathing.  **This frequency of flares would be with ideal atmospheric conditions.  Even with a clean work environment, however, there would be outside air conditions that could not be avoided and which would trigger additional flares.**
>
> I do not see him every time he has a flare.  He deals with many of his flares himself using medications and protocols I have prescribed.  I think in the past he has sometimes worked because of economic necessity when medically he should not have

_____

[1]The ALJ erroneously refers to Dr. Doornbos as plaintiff's primary care physician (R. at 25).  The medical records indicate that Dr. Harrod is plaintiff's primary care or family physician (R. at 360, 164), and that Dr. Doornbos is plaintiff's pulmonary physician.

> worked.  He tried very hard to keep his job
> at Cessna.  He has recently tried working
> again.

(R. at 362-363, emphasis added).

On December 11, 2003, Dr. Doornbos wrote a letter, in which he indicated the following:

> The only true restriction that I would place
> on him for further employment is that he not
> be exposed to any known sensitizing agents,
> such as TDI.  He will probably have recurrent
> episodes of illness due to his asthma even if
> he is not exposed to TDI and I think that
> some sort of plan would need to be in place
> so that he is not penalized if he does have
> absences from the workplace due to his
> illness.  This may need to be taken care of
> under FMLA or some similar mechanism.

(R. at 368).  The ALJ gave controlling weight to the opinion of Dr. Doornbos that plaintiff should avoid chemical and environmental irritants (R. at 26).  However, the ALJ concluded that the opinion of Dr. Doornbos that plaintiff would not be able to sustain work attendance in even a clean environment due to frequent absences from asthma flares is not supported by the objective evidence (R. at 26).

In discounting the opinion of Dr. Doornbos, the ALJ noted the following concerning plaintiff's most recent employment:

> The claimant testified [at the hearing on May
> 2, 2006] that he began driving a truck for
> Waste Management on December 5, 2005, working
> 50-55 hours a week...He stated that he has
> missed a total of 6 days work at Waste
> Management, with 1 day due to asthma, 3 days
> due to high blood pressure, and 2 days due to
> a broken tooth requiring oral surgery...

> The claimant has been able to sustain
> reliable work attendance at his current job
> despite working in excess of 40 hours a week
> and the reported exposure to dust inherent in
> this job...
>
> The claimant has worked for the past 6 months
> in an occupation that admittedly involves
> exposure to dust (exhibit 9F/220) without
> significant workplace absences.   The
> claimant's asthma exacerbation in March, 2006
> resulted in only a 1-day work absence at
> most, contradicting Dr. Doornhos' assertion
> that each flare would cause 3 to 7 days
> workplace absence...
>
> The claimant has only missed 6 days of work
> during his past 6 months of employment,
> despite working 55 hour weeks.  Two of those
> days were to obtain dental work.  This
> indicates that the claimant would be able to
> maintain acceptable work attendance except
> when exposed to the chemicals used by
> aircraft manufacturers.

(R. at 23, 24, 27, 28).  The ALJ found that the opinions of Dr.

Doornbos is contradicted by plaintiff's lifestyle, other medical

sources, and plaintiff's current work activity, and therefore was

not accorded substantial weight (R. at 27).

It is clear from the decision that the ALJ gave great weight

to plaintiff's recent work activity in weighing the opinions of

Dr. Doornbos and in weighing plaintiff's credibility. At the time

of the hearing, plaintiff had been working for 5 months (December

5, 2005 through May 3, 2006).  At the hearing, plaintiff

testified that he missed 6 days of work, 1 day because of asthma,

3 because of blood pressure going up due to the asthma medicine

he had been given, and 2 days for dental problems (R. at 435-

436).  Plaintiff testified that he had been told by his employer
that his number of absences was "unacceptable" (R. at 435, 437).
Plaintiff also indicated that his employer had told him he was
too slow; plaintiff testified that the reason he is slow is due
to asthma problems (R. at 437-438).

The record shows that from December 5, 2005 through the
hearing date of May 3, 2006, plaintiff had missed 6 days of work;
this included 1 day because of asthma, and 3 days because of
blood pressure going up due to the asthma medicine he had been
given.  At the hearing, plaintiff testified that he had been told
that this number of absences was unacceptable.   Subsequent to
his testimony and the decision by the ALJ, the medical records
indicated that plaintiff was treated for a lung infection in mid-
May (R. at 411).  On May 29, 2006 plaintiff saw his physician
because of an asthma attack, with numbness in his left hand, and
chest pain; plaintiff indicated he had been feeling bad for 5
days (R. at 411, 414).  His physician gave plaintiff a work
release for work from May 25-29 (R. at 411).  Plaintiff lost his
job sometime between May 3, 2006 (the date of the hearing before
the ALJ) and the visit to his physician on June 20, 2006 because
of "missing so much work from his breathing problems" (R. at
414).  These medical records were included in the record and
presented to the Appeals Council (R. at 8).  However, the Appeals
Council found that the additional information did not provide a

basis for changing the ALJ's decision (R. at 5-6, 8).[2]

Dr. Doornbos had opined that plaintiff would, even with clean air, have asthma problems every 3-6 months, during which he should not work for at least 3-7 days. The ALJ stated that plaintiff's lack of workplace absences contradicted this opinion by Dr. Doornbos, and that plaintiff's recent employment indicated that plaintiff would be able to maintain acceptable work attendance except when exposed to the chemicals used by aircraft manufacturers (R. at 27, 28). However, a review of plaintiff's work record from December 2005 through June 2006 not only does not contradict the opinion of Dr. Doornbos, the record fully supports the opinion of Dr. Doornbos. Between December 5, 2005 and May 3, 2006, plaintiff had missed 4 days because of asthma or blood pressure problems related to plaintiff's asthma medication. During that time, his employer had indicated to the plaintiff that his number of absences (6) were unacceptable. After May 3, 2006, plaintiff was treated for a lung infection in mid-May and then had an asthma attack and chest pain which culminated in a visit to his physician on May 29, 2006. At that visit, his physician gave plaintiff a work release for work from May 25-29. By June 20, 2006, plaintiff had lost his job because he had

---

[2]Since these medical records were made a part of the administrative record by the Appeals Council, they will be considered by the district court in its review of the Commissioner's decision. O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994).

14

missed so much work because of his breathing problems.

The record thus supports the opinion of Dr. Doornbos because from December 5, 2005 through June 20, 2006 (about 6 ½ months), plaintiff missed at least 3-7 days of work due to asthma problems.  The additional medical evidence submitted after the ALJ decision is obviously critical to an evaluation of the opinions of Dr. Doornbos and plaintiff's credibility.  For this reason, the court does not agree with the Appeals Council that the medical evidence submitted after the ALJ decision does not provide a basis for changing the ALJ's decision.  See Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).  This case should therefore be remanded in order for the ALJ to determine what weight should be accorded to the opinions of plaintiff's treating physician in light of the fact that plaintiff's absences during his most recent employment and his loss of that job due to those absences is consistent with the opinion of Dr. Doornbos.

The ALJ also stated that normal pulmonary function studies provided objective evidence that did not support the opinion of Dr. Doornbos that plaintiff could not sustain work attendance in even a clean environment due to frequent absences from asthma flares (R. at 26).  However, Dr. Doornbos acknowledged that plaintiff often has pulmonary function test results that are not too bad, and that asthma attacks do not severely limit plaintiff much of the time when he can avoid irritants, but Dr. Doornbos

15

went on to opine that even with a clean environment, plaintiff
would have asthma problems every 3-6 months during which
plaintiff could not work for 3-7 days (R. at 362).  There is no
medical opinion evidence in the record that this opinion by Dr.
Doornbos is not supported by the pulmonary function studies.

An ALJ is not free to substitute his own medical opinion for
that of a disability claimant's treating doctors.  Hamlin v.
Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  The ALJ is not
entitled to sua sponte render a medical judgment without some
type of support for his determination.  The ALJ's duty is to
weigh conflicting evidence and make disability determinations; he
is not in a position to render a medical judgment.  Bolan v.
Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  In the
absence of any medical evidence to support the ALJ's assertion
that the opinions of Dr. Doornbos are not supported by the
pulmonary function studies, the ALJ overstepped his bounds into
the province of medicine.  Miller v. Chater, 99 F.3d 972, 977
(10th Cir. 1996).

The ALJ also noted that Dr. Doornbos had declined to place
plaintiff on any formal work restrictions in connection with his
most recent job, but advised plaintiff to wear a dust mask on
March 16, 2006 (R. at 25, 366).  On remand, the ALJ should also
take into consideration the statement of Dr. Doornbos on April
28, 2006 that plaintiff has "sometimes worked because of economic

16

necessity when medically he should not have worked" (R. at 363).

The ALJ further indicated that plaintiff's C-Pap machine is effective in maintaining optimum oxygen saturation (R. at 26). However, the ALJ failed to comment on what weight he gave to the opinion of Dr. Doornbos that the C-Pap machine does not work effectively when he has vocal cord spasms; therefore, plaintiff also suffers from fatigue (R. at 363-364).  The ALJ did not cite to any medical evidence that contradicts or disputes this opinion by Dr. Doornbos.  The ALJ should further address this opinion on remand as well.

## VI.  Did the ALJ err in his analysis of plaintiff's credibility?

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in

evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in <u>Kepler</u>.  <u>White v. Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2002); <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  <u>Hardman v. Barnhart</u>, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  <u>White</u>, 287 F.3d at 909-910.

When this case is remanded, the ALJ shall conduct a new credibility analysis after giving further consideration to the opinions of Dr. Doornbos and plaintiff's recent unsuccessful work attempt.  The ALJ had evaluated plaintiff's credibility based on his erroneous belief that plaintiff had been able to sustain reliable work attendance at his most recent job (R. at 24).  Plaintiff raises other arguments concerning the ALJ's analysis of plaintiff's credibility which can be addressed when this case is remanded.  The court will not reweigh the evidence or substitute

its judgment for that of the Commissioner.  Hackett v. Barnhart,
395 F.3d 1168, 1173 (10th Cir. 2005).

**VII.  Should this case be reversed and remanded for further
hearing, or reversed for an award of benefits?**

At step five, the burden of proof is on the defendant to
produce evidence that the claimant could perform other work in
the national economy.  Where the burden is not met, reversal is
appropriate.  Harris v. Secretary of Health & Human Services, 821
F.2d 541, 544 (10th Cir. 1987).  When a decision of the
Commissioner is reversed, it is within the court's discretion to
remand either for further administrative proceedings or for an
immediate award of benefits.  When the defendant has failed to
satisfy their burden of proof at step five, and when there has
been a long delay as a result of the defendant's erroneous
disposition of the proceedings, courts can exercise their
discretionary authority to remand for an immediate award of
benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir.
1993).  The defendant is not entitled to adjudicate a case ad
infinitum until it correctly applies the proper legal standard
and gathers evidence to support its conclusion.  Sisco v. United
States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th
Cir. 1993).  A key factor in remanding for further proceedings is
whether it would serve a useful purpose or would merely delay the
receipt of benefits.  Harris, 821 F.2d at 545; see Salazar v.

19

Barnhart, 468 F.3d 615, 626 (10th Cir. 2006).  The decision to
direct an award of benefits should be made only when the
administrative record has been fully developed and when
substantial and uncontradicted evidence on the record as a whole
indicates that the claimant is disabled and entitled to benefits.
Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

        Plaintiff argues that the case should be reversed for an
award of benefits.  Although the opinions of Dr. Doornbos,
plaintiff's treating physician, would clearly support a finding
of disability, there is evidence from an examining physician, Dr.
Murati (R. at 239-243) and the state agency consulting physician,
who relied on the opinion of Dr. Murati (R. at 244-251), that
differs from the opinions of Dr. Doornbos.  Although the ALJ
improperly discounted the opinions of Dr. Doornbos because of his
erroneous conclusions about plaintiff's recent work history, the
ALJ is entitled to consider the opinions of Dr. Doornbos in light
of the entire evidentiary record, including medical opinions,
other medical evidence, and plaintiff's daily activities.  The
court should not engage in the task of weighing evidence in the
first instance, Clifton v. Chater, 79 F.3d 1007 at 1009; Neil v.
Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998), but should
review the Commissioner's decision only to determine whether his
factual findings are supported by substantial evidence and
whether he applied the correct legal standards.  Clifton, 79 F.3d

at 1009.[3]

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on July 16, 2008.


                              s/John Thomas Reid
                              JOHN THOMAS REID
                              United States Magistrate Judge

---

[3]Plaintiff argues that "it is now approaching 8 years since Plaintiff applied for benefits" (Doc. 13 at 25).  However, the record indicates that plaintiff applied for disability insurance and SSI on June 2, 2004 (R. at 84-86, 405-407).

21